# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARLINGTON DEVCO, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 3558 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| T10 MELTEL, LLC, f/k/a | ) | |
| T10 UNISON SITE MGMT, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In June 2011, the plaintiff purchased a building, which was formerly a hotel, in Arlington Heights, Illinois. The plan was to transform the hotel into an apartment building. At the time of the purchase, there were a number of cellular carrier "tenants" – T Mobile, US Cellular, and Nextel are specified – operating their cellular equipment on the building's roof pursuant to leases. [Dkt. #1-1, Pages 10-79/116]. After its purchase of the property, the plaintiff entered into negotiations to sell the cellular leases to the defendant. The agreement the parties reached included a $362,822.40 holdback of the purchase price which would be released to the plaintiff if certain conditions relating to a specific cellular company operating on the site were met. The plaintiff contends that it is entitled to the holdback amount because it met those conditions as Clearwire is one of the cellular companies operating on the site. The defendant contends that those conditions were not met because the parties agreed that Nextel, not clearwire, had to be operating on the site for plaintiff to receive the holdback amount. The defendant never paid plaintiff the holdback amount and, so, the plaintiff brought a breach of contract claim against the defendant. The defendant has moved for summary

judgment on that claim.

**ANALYSIS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). This requires that "there be no *genuine* issue of *material* fact," and "the mere existence of *some* alleged factual dispute" will not defeat summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986); *Bordelon*, 811 F.3d at 989. The moving party bears the initial burden of production, and must inform the district court why a trial is not necessary. *Celotex Corp.*, 477 U.S. at 325; *Sterk v. Redbox Automated Retail, LLC,* 770 F.3d 618, 627 (7th Cir. 2014). The party opposing summary judgment must go beyond the pleadings to show that there is a genuine issue of fact that must be resolved with a trial. *Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016).[1]

**A.**

The parties' first step toward litigation was to stagger their negotiations into three agreements. They began with a "Terms of Agreement" dated May 8, 2012, which the parties

---

[1] This case finds itself in the Northern District of Illinois. As such, binding authority comes from the Supreme Court or the Seventh Circuit. And, where contract issues are involved, decisions of the Illinois courts are significant. *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994)("Opinions 'bind' only within a vertical hierarchy."). Yet, in briefing what it calls the "Applicable Legal Standard" for summary judgment, the plaintiff cites not a single case from the Supreme Court, the Seventh Circuit, or even the Northern District of Illinois. All we find are citations to the First Circuit, the Second Circuit, and worse, the district courts of the Eastern District of New York, Nebraska, Connecticut, and West Virginia. [Dkt. #41, at 4-5]. Decisions of district courts are not authoritative even within the rendering district. *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012); *Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 970 (7th Cir. 2012). The plaintiff provides such a patchwork quilt of unauthoritative citations that one might suspect it was deliberately avoiding the Supreme Court and the Seventh Circuit. This kind of briefing can only serve to detract from one's overall position.

acknowledged were "the business terms upon which this transaction will be completed . . . However, the terms are subject to due diligence and final Underwriting by [defendant], and receipt by [defendant] of all required documentation." [Dkt. #1-1, Page 80/116]. Under the "Terms of Agreement", the purchase price the defendant would pay for the 50-year easement was about $1.3 million. [Dkt. #1-1, Page 80/116]. Most of the defendant's payment to the plaintiff for the easement would be made at closing, but part would be made 48 months later "if and only if Nextel is still operating on the site, paying rent, and has not provided any indications of intent to terminate or decommission." [Dkt. #1-1, Page 80/116]. Although it purportedly covered payments four years in the future, it was nevertheless set to expire in 6 months – November 2012 – unless extended by mutual consent. [Dkt. #1-1, Page 80/116].[2]

Two months later, in July 2012, the defendant wrote to plaintiff [Dkt. #39, ¶ 17], saying its letter would "serve as a record of [the parties'] mutual agreement" that defendant would fund escrow accounts to cover two holdbacks: a $362,822.40 Nextel Holdback and a $300,000 Relocation Holdback. The terms of the funding of the escrow account for the holdback at issue, the Nextel Holdback, were as follows:

> 1. Nextel Holdback Amount. For a period not to exceed 48 months from the date of closing (the "Closing Date"), $362,822.40 (72x) for Nextel if and only if Nextel is (i) still operating on the site, (ii) paying rent, and (iii) has not provided any indications of intent to terminate or decommission; . . .

[Dkt. #1-1, Page 92/116]. The document went on to state that defendant would release the Nextel holdback only if some very specific conditions were met:

---

[2] With a closing date in July 2012, the latest the plaintiff could have been entitled to the $362,822.40 Nextel holdback – and could have had a claim against defendant for breach of that provision – would have been July 2016, given the "not to exceed 48 months" period set forth in the agreement. Curiously, the plaintiff filed suit on March 25, 2015, over a year before that. [Dkt. # 1-1, Page 2/116].

> [Defendant] will release the Nextel Holdback amount to [plaintiff] amount within 48 hours of the following:
>
> 1. Pictures from [defendant's] representative confirming the then current Nextel installation showing electric meters operating and equipment installed connected and operating;
>
> 2. Receipt of a the [sic] rent check from Nextel for payment of the rent for the then current month following the Closing Date in accordance with the current rent structure on the Closing Date; and
>
> 3. Receipt of written confirmation from [defendant's] Lease Administration Department and [plaintiff] that Nextel has not provided any indication of intent to terminate or decommission.

[Dkt. #1-1, Page 92-93/116]. The agreement went on to provide that defendant would release the funds to itself – *i.e.*, close the escrow and retain the money – "upon the earlier of . . . 48 hours after the expiration of the 48th month following the Closing Date" if the three conditions were satisfied or "on or before the end of the twelfth (12th) month following the Closing Date, if Nextel ceases to pay rent under the current rent structure." [Dkt. #1-1, Page 93/116]. Plaintiff's representative signed the letter agreement on July 19, 2012. [Dkt. #1-1, Page 97/116].

That same day, July 19, 2012, the parties executed a "Wireless Communication Easement and Assignment Agreement." [Dkt. #1-1, Pages 99-116/116]. This Easement Agreement covered the nuts and bolts of the easement, but said nothing about the holdbacks or, indeed, the $1.3 million purchase price. The agreement included a provision stating that it "constitute[d] the entire agreement and understanding of [the parties] with respect to the subject matter of this Agreement, and supersedes all offers, negotiations and any other written or verbal agreements . . . ." [Dkt. #1-1, Page 104/116].

**B.**

So, the parties' agreement made it rather clear what had to happen before defendant was obligated to release the holdback money to plaintiff, *i.e.*, the condition precedent to defendant's performance. *See Cathay Bank v. Accetturo*, – Ill.App.3d –, –, 66 N.E.3d 467, 476 (1st Dist. 2016)("A 'condition precedent' is an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform.'); *Beal Bank Nevada v. Northshore Ctr. THC, LLC*, 64 N.E.3d 201, 207 (Ill. App. Ct. 2016)(defining condition precedent as "an event which must occur or an act which must be performed by one party to an existing contract before the other party is obligated to perform."). When a contract contains an express condition precedent, strict compliance with such a condition is required. *Cathay Bank*, 66 N.E.3d at 477; *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 668, 891 N.E.2d 1, 23 (2007). The contract does not become enforceable or effective until the contract is performed or the contingency occurs. *Beal Bank Nevada*, 64 N.E.3d at 207; *Midwest Builder Distrib.*, 383 Ill. App. 3d at 668, 891 N.E.2d at 23. "Courts will enforce express conditions precedent despite the potential for harsh results for the noncomplying party . . . ." *Midwest Builder Distrib.*, 383 Ill. App. 3d at 668, 891 N.E.2d at 23. This is particularly true where, as in this case, the parties are sophisticated business entities. *Midwest Builder Distrib.*, 383 Ill. App. 3d at 668, 891 N.E.2d at 23.

The parties agree that Nextel gave way to Clearwire and that Nextel is no longer operating on the site or paying rent. [Dkt. #1-1, Page 6/116, Complaint, ¶17; Dkt. #41, at 5-6; Dkt. #42, ¶ 22]. So, under the terms of not only the July 2012 Holdback Agreement, but the May 2012 "Terms of Agreement" as well, the salient condition for plaintiff getting the $362,922.40 holdback – Nextel still operating on the property – was not met. Nextel is not still operating on the site or paying rent. As

5

such, plaintiff cannot establish the condition precedent to defendant's performance and its claim for breach of contract fails.

It must be said that the plaintiff's attempt to oppose the defendant's motion for summary judgment on its breach of contract claim is feeble at best. Covering four scant pages, the response cites not a single case. [Dkt. #41, at 5-9]. Time and again, the Seventh Circuit has made clear that arguments unsupported by pertinent authority need not be considered. *See, e.g., St. John v. Cach, LLC*, 822 F.3d 388, 392 (7th Cir. 2016); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *Long–Gang Lin v. Holder,* 630 F.3d 536, 543 (7th Cir. 2010); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). As such, it is rare that an entire response to a motion for summary judgment is devoid of case law. In its briefing on this matter, plaintiff has evinced an insouciance – disregard of local rules, neglect of applicable case law – that suggests it was not particularly interested in the outcome. So be it.

Plaintiff contends that the parties clearly intended that Nextel and Clearwire would be treated as one in the same entity for the purposes of the holdback. Plaintiff wagers all on a provision in the parties' "Terms of Agreement" that is found under the "Relocation holdbacks section:

> In the event any one the [sic] Tenants agree to relocate but does not agree to pay for the move, Site Owner will pay for the relocation of each applicable Tenant, at a cost not to exceed $150,000.00/Tenant (noting Clearwire and Nextel for purposes of this provision are deemed one tenant) (the "Holdback Amount"). Since the Closing shall take place in advance of the proposed relocation, the Holdback Amount shall be withheld from the Purchase Price for all Tenants at closing and shall be remitted to the Site Owner upon the completion of the relocation for each Tenant. A Holdback letter agreement shall be signed at closing confirming the conditions for remittance of up to $150,000 per each cellular company that agreed to relocate their equipment but did not pay for the move.

[Dkt. #1-1, Page 81/116]. Plaintiff's position is, essentially, that it would not have agreed to a deal

6

that created two holdbacks, both of which involved the Nextel lease and its continued existence, in spite of a likely event – Nextel selling out to Clearwire – that would disallow one of those holdbacks: the one at issue here, the Nextel holdback. [Dkt. #41, at 6].

First of all, plaintiff's underlying premise is flimsy. Courthouses are frequented by parties who make bad deals and hope to be bailed out. The plaintive cry, "why would my client have agreed to that, judge?" is heard often enough. But, the parties' intent is not determined by what they might prefer in hindsight, but by objective manifestations of that intent: outward expressions such as words and acts. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016); *Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d 1124, 1130 (7th Cir. 2014)("Contract law depends not on private and unexpressed intentions but on objective expressions of intent and agreement."). The words on the page manifest the parties' intent as to their agreement.

Plaintiff tells us that the parties were aware of the possibility that Clearwire might purchase Nextel's lease and takeover their equipment, and so they accounted for that possibility in their "Terms of Agreement." In its brief in opposition to the defendant's motion for summary judgment, plaintiff contends that Nextel giving way to Clearwire was a "likely event" and that it would not have agreed to a scenario where the occurrence of a likely event meant it forfeited the $362,922.40 holdback. But plaintiff points to nothing in its Local Rule 56.1 submissions – or anything – to show that, at the time the parties were negotiating, it *was* a likely event.

It must be remembered that plaintiff agreed to the relocation holdback provision, under which it would forfeit a similar amount of money if it didn't manage to relocate the cellular equipment within 12 months. It didn't come close to completing the relocation in 12 months. The work actually took over twice that long. [Dkt. #39, ¶¶ 27-29]. That's not surprising, given the scope of

7

the work that had to be done. At his deposition, the plaintiff's manager explained that the plaintiff had to reconstruct the entire roof, "leaving the steel but scraping . . . the roofs and insertional flooring . . ." and then adding "a floor to the roof for building amenities", including a yoga studio, a fitness center, a demonstration kitchen and an open-air deck with firepits. Dkt. #37-2, Ex. 4 (Trandel Dep.), at 21-22]. The plaintiff had to add four feet of platform to the entire roof, then construct 3000 square feet of indoor space. [Dkt. #37-2, Ex. 4 (Trandel Dep.), at 23]. That's a lot of work to complete in just 12 months even if everything goes smoothly and, as the plaintiff's manager said, it rarely does. [Dkt. #37-2, Ex. 4 (Trandel Dep.), at 23-24]. So, one might reasonably say that given the fact that plaintiff agreed to a complete the reconstruction of the roof and moving the cellular equipment in just 12 months – seemingly an unlikely event – in order to obtain the relocation holdback, why would it "belie reason", as plaintiff puts it, that the plaintiff would agree to another unlikely event to reap the Nextel holdback?

Beyond that, there are some insurmountable hurdles to plaintiff's theory. The "Clearwire equals Nextel" provision only appears in the parties' May 2012 "Terms of Agreement", which by its terms expired in November 2012, years before the Nextel holdback would be due and payable. Moreover, even in that expired agreement, the "Clearwire equals Nextel" term is found only in the relocation holdback section, and the parties specifically stated it would only apply to the relocation holdback: ". . . noting Clearwire and Nextel for purposes of *this provision* are deemed one tenant . . . ." [Dkt. #1-1, Page 81/116 (emphasis supplied)]. The Nextel holdback provision had no similar term. It makes sense that there would be an allowance made for Nextel giving way to Clearwire in the relocation holdback provision because the plaintiff was moving that equipment one way or the other. But the Nextel holdback was a different animal.

8

And, even assuming that "Clearwire equals Nextel" carries though to all subsequent agreements and that, contrary to the clear language of even the parties' May 2012 "Terms of Agreement", the "Clearwire equals Nextel" provision is not limited to the Relocation Holdback, the plaintiff still hasn't satisfied the conditions precedent. Those include, as already indicated, pictures confirming Nextel's installation is operating, a rent check from Nextel, and written confirmation that Nextel has not provided any indication of intent to terminate or decommission. [Dkt. #1-1, Page 92-93/116]. The plaintiff does not dispute that these conditions are lacking [Dkt. #42, ¶¶23-24], and does not address the point in its response to the defendant's motion for summary judgment [Dkt. #41, at 5-9], other than to say that the Fed.R.Civ.P. 30(b)6) deponent plaintiff provided had no knowledge of whether plaintiff fulfilled these conditions precedent. [Dkt. #41, at 8].

It's up to the plaintiff to prove it fulfilled the conditions precedent that would have given rise to defendant's obligation to release the holdback money. Plaintiff can't simply stand mute or say it doesn't know one way or the other. Well, it can, but in a summary judgment proceeding where it has the burden of proof on an issue, that's fatal. "'A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). If plaintiff had any proof that it satisfied any of the conditions precedent, it was required to have submitted it in response to the defendant's motion for summary judgment, as the Seventh Circuit has held time and again.

Finally, plaintiff points to a letter it sent the defendant on October 24, 2014. [Dkt. #41, at 8]. In the letter, the plaintiff contended that defendant was in default and that plaintiff was due the $362,822.40 Nextel Holdback because Clearwire bought Nextel's lease and was operating on the site. [Dkt. #42, Page 15/42]. In response, the defendant wrote, *inter alia*, that given the 48-month

9

provision in the Nextel Holdback, plaintiff was about two years too early in making such a claim. [Dkt. #42, Page 18/42]. It was a blatantly obvious flaw in the plaintiff's claim. *See* fn. 1, *supra*. But, the plaintiff now contends that, because the defendant failed to raise the specific questions of the failure of conditions precedent, it cannot do so now in this litigation. This, according to the plaintiff, scuttles the defendant's motion for summary judgment.

But, Plaintiff does little or nothing to develop this position. As throughout its response to the defendant's motion for summary judgment on its breach of contract claim, it cites no case law in support of its position that the defendant's failure to specifically raise the conditions precedent in its response rules the day. As already made clear, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *Berkowitz*, 927 F.2d at 1384 (7th Cir. 1991); *see also Crespo*, 824 F.3d at 674; *Long–Gang Lin,* 630 F.3d at 543. Moreover, long standing case law on the subject runs counter to plaintiff's position:, and has done so for a very long time:

> A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission.

*Leach & Co. v. Person*, 275 U.S. 120, 128 (1927) (Holmes, J.). More recently, the Seventh Circuit has explained:

> With respect to statements contained in a letter, the failure to reply to a letter may be introduced as an admission of the statements contained in the letter when the receiver of the letter remains silent in a situation where a response would seem natural or expected. John W. Strong, McCormick on Evidence § 262 at 171 (5th ed.1999). The burden is on the party seeking to introduce the letter to establish that under the circumstances the failure to respond is so unnatural that it supports the inference that

10

the party acquiesced to the statements contained in the letter.

*Tober v. Graco Children's Prod., Inc.*, 431 F.3d 572, 576 (7th Cir. 2005).

Here, of course, the defendant didn't fail to respond to plaintiff's letter. It responded and pointed out the most obvious flaw in plaintiff's position: plaintiff was about two years too early! Worse than that for plaintiff, even if the defendant had failed to respond, the plaintiff hasn't taken the trouble to carry its burden of establishing any circumstances to show that the defendant acquiesced to anything in the letter. Plaintiff hasn't even explained to the court in its brief why what it calls an "Estoppel Letter" should have any special import in this case. [Dkt. #41, at 8-9].

It's not up to the court to develop potential arguments for parties, *see, e.g., Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008), but it is likely that the plaintiff thinks its "Estoppel Letter" is an "Estoppel Certificate" as described in the parties' Easement Agreement. In Paragraph 12 of that agreement, the parties allowed for one side to send the other an "estoppel certificate" asking the responding party "whether . . . the requesting party is in default in performance of any of its obligations . . . ", whether the requesting party owed the responding party any money, and "any other information reasonably requested . . . ." " [Dkt. #1-1, Pages 103/116].[3]

---

[3] The provision provides, in full:

Estoppel Certificate. At any time during the term hereof; each party shall have the right to deliver to the other a statement of such party certifying: (i) that this Agreement is unmodified and in full force and effect (or, if there have been modifications, stating the modifications and that the modified Agreement is In full force and effect); (ii) whether or not, to the best knowledge of the responding party, the requesting party is in default in performance of any of its obligations under this Agreement, and, if so, specifying each such default; (iii) that there are no amounts due to the responding party from the requesting party; and (iv) any other information reasonably requested concerning this Agreement (the "Estoppel Certificate"). In the event the responding party fails to dispute the Estoppel Certificate by delivery to the requesting party of a notice specifying the nature and circumstances of any matter in the Estoppel Certificate that is disputed by the responding

continue...

But, in the letter plaintiff relies on, plaintiff, rather than asking whether it was in default as per the terms of Paragraph 12 of the Easement Agreement, instead certified that defendant was in default. [Dkt. #42, Page 13/42]. As we know, defendant was actually not in default because plaintiff was two years too early in its demand for the Nextel Holdback, and defendant explained that to plaintiff. [Dkt. #42, Page 18/42]. Again, plaintiff does not discuss the terms of Paragraph 12 anywhere in its brief or suggest how its "Estoppel Letter" qualifies as an "Estoppel Certificate" under the terms of Paragraph 12.

This case presents a rather simple matter of one side to a contract failing to meet the conditions precedent giving rise to the other side's obligation to make a payment. The plaintiff has failed to establish that those conditions – that Nextel remain in operation on the site after four years and that that fact be demonstrated with photos, rent checks, and a written confirmation – have been met. As a result, the decision in favor of the defendant is easy. It is made all the easier by the plaintiff's failure to develop its positions with citation to pertinent authority – something, as we have noted, on which the Seventh Circuit has expressed extreme displeasure. *Irish v. BNSF Ry. Co.,* 674 F.3d 710, 715 (7th Cir. 2012); *Hess v. Kanoski & Associates*, 668 F.3d 446 (7th Cir. 2012); *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993).

---

[3]...continue
party within ten (I0) days of receipt of the Estoppel Certificate, then all matters specified in the Estoppel Certificate shall be deemed true and correct, and the Estoppel Certificate shall thereafter be binding on the Parties, Secured Party or any party designated by the requesting party, and all of such parties may thereafter rely on the Estoppel Certificate as a conclusive statement of fact by the responding party as to the matters set forth therein.

[Dkt. #1-1, Pages 103/116].

## CONCLUSION

The defendant's motion for summary judgment on the plaintiff's claim for breach of contract – Count I of plaintiff's complaint – is GRANTED.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/27/17